***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named.
4. Plaintiff's average weekly wage will be determined from an I.C. Form 22, Wage Chart, to be provided by defendant-employer.
5. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records.
6. The parties stipulated into evidence as Stipulated Exhibit 2, Defendants' Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents, Industrial Commission forms and two recorded statements.
7. The parties stipulated into evidence as Stipulated Exhibit 3, Plaintiff's Answers to Defendants' First Set of Interrogatories and First Request for Production of Documents.
8. The parties also stipulated into evidence the following: Plaintiff's Responses to Defendants' Second Set of Interrogatories and Request for Production, medical records from Southeastern Center for Mental Health and Employment Security Commission records.
9. I.C. File No. 841838 deals with an alleged injury by accident on November 23, 1997 and I.C. File No. 851924 deals with an alleged injury by accident on July 15, 1998.
10. The depositions of Dr. Thomas Parent, Lawrence M. Shall, M.D. and Kevin P. Speer, M.D. are a part of the evidentiary record in this case.
 ***********
Based on the greater weight of the competent evidence of, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 20-year-old female, born February 4, 1980. Plaintiff only went through the sixth grade but obtained her GED, high school equivalency, in 1997. Plaintiff's only work experience is as a cashier and an exotic dancer.
2. Plaintiff has a history of narcotic abuse with street drugs, a history of sexual abuse, a history of suicidal attempts and attempts to harm herself and a history of depression with borderline personality disorder. Plaintiff is a member of Narcotics Anonymous.
3. Plaintiff became employed with defendant-employer as a cashier on June 28, 1997. From June 28, 1997 through November 22, 1997, plaintiff earned $1,569.65. Plaintiff was a part time employee who worked 25 to 30 hours per week.
4. On November 23, 1997, plaintiff was working the second shift. As she was ringing up groceries, plaintiff testified at the deputy commissioner hearing that she reached across her body with her left arm to pull and lift a one-gallon container of milk from the grocery cart located to her right in an attempt to scan the item. Plaintiff now alleges that as she lifted and pulled the one-gallon container of milk toward her, plaintiff's shoulder popped, dislocated and she felt immediate sharp pain and asserts that this occurred because the container was wet with condensation. Before the deputy commissioner's hearing, however, plaintiff gave a recorded statement to defendant-carrier wherein plaintiff stated that she was scanning a container of water, that it did not slip, and there was nothing unusual about this activity. Plaintiff did not describe condensation, slipping, or any untoward event in the recorded statement and the Full Commission finds that plaintiff's testimony before the deputy commissioner was not credible and that she has changed her story in an effort to create a compensable claim. The Commission further finds that it was not an unusual event for plaintiff to lift and pull a one-gallon container of milk or water toward her; plaintiff regularly performed this action during the course of her shift ringing up groceries. Thus, the Full Commission concludes from the greater weight of the competent evidence that plaintiff did not sustain an injury from an accidental or untoward event.
5. Plaintiff was taken from work to the emergency room at New Hanover Regional Medical Center where she was referred to an orthopedic surgeon, Dr. Thomas Parent.
6. Plaintiff presented to Dr. Parent on November 24, 1997 and was diagnosed with shoulder instability. Plaintiff's shoulder was reduced under local anesthesia, and she was instructed not to work with her left upper extremity. At the time, plaintiff was seventeen (17) years old. In December 1997, plaintiff underwent an arthroscopic left anterior stabilization performed by Dr. Parent.
7. Dr. Parent was of the opinion that plaintiff did not exhibit any drug seeking behaviors while she was under his treatment. Dr. Parent was of the opinion that plaintiff might be purposely dislocating her shoulder. Plaintiff continued to complain to Dr. Parent of a painful automatically dislocating shoulder through her last treatment with him on June 18, 1998. Dr. Parent was of the opinion that as of June 1, 1998 plaintiff could return to work.
8. Plaintiff returned to work with Hannaford in July 1998 and attempted to perform her job duties. Plaintiff was told that she would receive assistance in lifting, but on July 15, 1998 after repeated requests for assistance, she lifted a bag of dog food to scan when her left shoulder again dislocated.
9. On July 27, 1998, plaintiff sought treatment with Dr. Kevin Speer, a board-certified orthopedic surgeon with Duke University Medical Center. On September 1, 1998, Dr. Speer performed an arthroscopic surgery and Bankart repair. In the course of that surgery, Dr. Speer found that plaintiff's first surgery, which had been performed by Dr. Parent, had failed and that the ligaments and cartilage in plaintiff's left shoulder were torn explaining plaintiff's dislocations.
10. On October 16, 1998, plaintiff underwent a third surgery, which was also performed by Dr. Speer, as her operative construct had torn apart and her shoulder had redislocated. Plaintiff had not suffered an additional injury.
11. Plaintiff was taken out of work by Dr. Speer from September 27, 1998 through and including January 16, 1999.
12. Dr. Speer indicated that he was never under the impression that plaintiff was voluntarily dislocating her shoulder. He was further of the opinion that based upon what he discovered in the surgeries, it would not be unusual for plaintiff's shoulder to dislocate.
13. Dr. Speer was of the opinion that plaintiff would definitely have a permanent disability rating which would be at least 5% for each surgery and possibly more depending the results of a shoulder assessment. Dr. Speer also indicated that plaintiff might ultimately need a shoulder fusion.
13. Plaintiff did not wish to have a shoulder fusion and sought another opinion with Dr. Esposito on March 18, 1999. Dr. Esposito recommended nerve conduction studies but plaintiff was unable to pay for these studies. Plaintiff saw Dr. Esposito one additional time but due to lack of financial resources she was unable to continue treatment with him.
14. Plaintiff eventually returned to Virginia for family financial assistance and sought treatment with Dr. Lawrence Shall, a board-certified orthopedic surgeon. Plaintiff presented to Dr. Shall on July 21, 1999. While under examination in the doctor's office, plaintiff's shoulder spontaneously popped part of the way out. Plaintiff was diagnosed with a recurrent anterior inferior and some other directional instability of the left shoulder without any new trauma.
15. On July 30, 1999, plaintiff underwent a thermal-capsular shrinkage surgery to tighten the shoulder joint capsule with heat.
16. On August 5, 1999, plaintiff returned with a post-operative subluxation from a non-functioning deltoid muscle. Plaintiff was prescribed a muscle stimulator and one was used on her that date.
17. On August 9, 1999, plaintiff reported that she had an infection and returned to Dr. Shall on August 12, 1999 with her shoulder still out of place. Plaintiff did not have the financial resources to obtain a muscle stimulator and indeed never did so. On that same date, plaintiff underwent a fifth surgery to address the infection in her joint.
18. Plaintiff returned on September 15, 1999 with her wound healed and her shoulder coming back into joint. At that time, Dr. Shall continued to recommend a muscle stimulator and physical therapy but plaintiff was unable to afford the same.
19. From July 20, 1999 through and including November 15, 1999, plaintiff was restricted to no use of her left shoulder by Dr. Shall.
20. Dr. Shall was of the opinion that while the prognosis for someone undergoing thermal capsular shrinkage is generally good, the fact that plaintiff has multi-directional instability and three prior surgeries greatly diminishes her chances for a good prognosis.
21. Plaintiff was unable to continue to treat with Dr. Shall for financial reasons. She has improved since her last surgery and has not had any further shoulder dislocations. However, plaintiff continues to have limitations with her shoulder and pain. Plaintiff additionally has a large scar that measures of an inch in width and runs from the top of her shoulder to where the arm meets the body on the front and a smaller scar on her back.
22. As explained in Finding of Fact No. 4, Plaintiff provided highly inconsistent accounts in her recorded statement with a representative of the carrier-defendant and testimony at the deputy commissioner hearing detailing these alleged workplace incidents; therefore, her testimony is not credible.
23. Plaintiff's alleged incident at work on November 23, 1997 resulting in a left shoulder injury did not constitute an injury by accident arising out of and in the course of her employment with defendant-employer as Plaintiff's work as a cashier often involved the handling of a one-gallon container of milk or water. Further, as explained in Finding of Fact No. 4, the Commission does not accept as credible, plaintiff's current testimony that the gallon of milk slipped because it was wet with condensation. The Commission accepts as credible plaintiff's original statement that the item did not slip and that there was nothing unusual about the circumstance. Thus, this incident was not an unusual occurrence interrupting plaintiff's normal and customary work duties.
24. The Commission further finds that plaintiff had a pre-existing deformity with her shoulder which allowed plaintiff to voluntarily dislocate her shoulder and that this condition was not caused, aggravated, or accelerated by the alleged incident at work.
25. As plaintiff's alleged incident of November 23, 1997 is not a compensable injury by accident, Plaintiff's alleged left shoulder dislocation while at work on July 15, 1998 cannot be a direct and natural result of a prior work-related injury. Further, the alleged incident on July 15, 1998 does not constitute an injury by accident arising out of and in the course of her employment with defendant-employer because part of Plaintiff's normal and customary duties as a cashier was to lift customers' groceries if a bagger was not available. The evidence does not support that this dislocation was caused by an accident or untoward event.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to carry her burden of proving with credible evidence that she sustained an injury by accident on November 23, 1997 arising out of and in the course of her employment with Defendant-Employer. N.C.G.S. § 97-2(6). An injury that occurs in the normal course of work duties are not compensable. See Smith v.Cabarrus Creamery Co., 217 N.C. 468, 8 S.E.2d 231 (1940); Swindell v.Davis Boat Works, 78 N.C. App. 393, 337 S.E.2d 592 (1985), cert. denied,316 N.C. 385, 342 S.E.2d 908 (1986).
2. Plaintiff has failed to carry her burden of proving with credible evidence that she sustained an injury by accident on July 15, 1998 arising out of and in the course of her employment with Defendant-Employer. N.C.G.S. § 97-2(6).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for benefits is, and under the law must be DENIED.
2. Defendant(s) shall pay the costs due the Commission for the initial hearing before the Deputy Commissioner and each side shall bear its own costs for hearing before the Full Commission.
This the ___ day of November 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING WITH SEPARATE OPINION:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING WITH SEPARATE OPINION:
 S/_____________ THOMAS J. BOLCH COMMISSIONER